## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LAWRENCE VALDEZ,

      Petitioner,

v.                                                      No.    CV 16-727-JB-GBW
                                                               CR 13-3594-JB

UNITED STATES OF AMERICA,

      Respondent.


### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before me on Petitioner's Motion to Vacate and Correct Sentence Pursuant to 28 U.S.C. § 2255 (*doc. 1*)[1] and his subsequent amendment thereto (*doc. 5*). Having reviewed the briefing (*docs. 8, 9*) and being fully advised, I recommend Petitioner's Motion be denied.

### I.  BACKGROUND

Petitioner was charged with Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2), in a one-count indictment that was filed on November 6, 2013. *Cr. Doc. 2.* Although he initially pled not guilty, Petitioner entered a changed plea of guilty to the indictment pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure on May 7, 2014. *Cr. Docs. 9, 28, 29.* The plea agreement included a binding stipulation to a term of 72 months imprisonment and a

---

[1] Citations to "*doc.*" refer to docket numbers filed in Case No. 16-CV-727-JB-GBW. Citations to "*cr. doc.*" refer to the attendant criminal docket, Case No. 13-CR-3594-JB. For filings made on both dockets, only the civil docket number is given.

waiver of collateral attack other than for claims of ineffective assistance of counsel. *Cr. Doc. 28*, ¶¶ 9, 18.

At the beginning of the May 7, 2014 change of plea proceeding, Petitioner was placed under oath. *Cr. Doc. 45* at 2. He stated that he had no illness or condition that impeded his ability to understand the proceedings. *Id*. at 4. Petitioner stated that he was not under the influence of drugs or alcohol and that he understood the proceedings. *Id*. The attorney for the government then reviewed the plea agreement, including its condition that Petitioner waive collateral review of his conviction and sentence, pursuant to 28 U.S.C. §§ 2241 and 2255, except as to the issue of effectiveness of counsel. *Id*. at 6-8. Petitioner stated that he knew he was waiving those post-trial rights and understood that the waiver would be enforced. *Id*. at 8. Petitioner reiterated that he understood every term of his plea agreement. *Id*. at 9. At the conclusion of the proceeding, the Court found that Petitioner was fully competent and capable of entering an informed plea; that he was aware of the nature of the charges; that he understood the consequences of pleading guilty; and that the plea of guilty was entered knowingly and voluntarily. *Id*. at 14.

Petitioner's sentencing guideline range was determined pursuant to U.S.S.G. § 2K2.1. As reflected in the presentence report (PSR), Petitioner had been convicted of trafficking by distribution of cocaine and the burglary of a dwelling house. PSR ¶¶ 34, 53. Because the trafficking conviction constituted a "controlled substance offense" and

the burglary of a dwelling conviction was considered a "crime of violence" under the definition found in U.S.S.G. § 4B1.2(a)(2),[2] Petitioner's base offense level was calculated at 24 pursuant to U.S.S.G. § 2K2.1(a)(2).  PSR ¶ 19.  After the three-level reduction for acceptance of responsibility, Petitioner's total offense level was calculated at 21.  With a criminal history category of VI, Petitioner's guideline range was 77-96 months.  Nonetheless, the Court accepted the parties' stipulation to a sentence of 72 months imprisonment.  *Cr. Doc. 36*.  Moreover, the Court ordered that the sentence be served concurrent to a separate prison sentence arising from the revocation of probation in Petitioner's prior state conviction.  *Id*.

Petitioner's Motion argues that his conviction for burglary of a dwelling is no longer a crime of violence in light of *United States v. Johnson*, 135 S. Ct. 2551 (2015).  *Doc. 5* at 3.  He contends that the *Johnson* decision should be applied retroactively to adjust the sentencing guideline range for his Felon in Possession of a Firearm and Ammunition offense to 51-63 months.  *Id*.  Consequently, he would not have agreed to a 72-month sentence under such circumstances, and he is thus entitled to resentencing as a matter of due process.  *Id*. at 3-4.  Because (i) Petitioner waived his right to bring this collateral attack, (ii)  the application of *Johnson* to the guidelines should not be given retroactive effect, and (iii) his burglary of a dwelling conviction remains a crime of

---

[2] This provision was amended on August 1, 2016.  The amendment deleted the residual clause discussed herein from the definition of "crime of violence."  The remainder of the definition remained the same. Because it is the relevant provision, citations to U.S.S.G. § 4B1.2(a)(2) refer to the pre-2016 amendment version.

violence under U.S.S.G. § 4B1.2(a)(2) after *Johnson*, I recommend denying Petitioner's Motion.

## II.    WAIVER OF COLLATERAL REVIEW

As noted above, Petitioner waived his right to bring a collateral attack, such as the instant motion, in his plea agreement.  A "waiver of collateral attack rights brought under § 2255 is generally enforceable where the waiver is expressly stated in the plea agreement and where both the plea and the waiver were knowingly and voluntarily made." *United States v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001).  However, "the constraints which apply to a waiver of the right to direct appeal also apply to a waiver of collateral attack rights." *Id*.  Therefore, in reviewing whether to enforce the waiver of appellate or collateral attack rights, the Court must determine: (1) whether the disputed appeal falls within the scope of the waiver of appellate [or collateral attack] rights; (2) whether the defendant knowingly and voluntarily waived his appellate [or collateral attack] rights; and (3) whether enforcing the waiver would result in a miscarriage of justice. *See United States v. Hahn*, 359 F.3d 1315, 1325-1327 (10th Cir. 2004).  Petitioner does not dispute that his Motion falls within the collateral attack waiver in his plea agreement.  Nor does he argue that he did not knowingly and voluntarily waive his collateral attack rights.  He only contends that enforcing the waiver would result in a miscarriage of justice. *See generally doc. 5.*

The Tenth Circuit Court of Appeals has defined what constitutes "miscarriage of

justice" under these circumstances.  "We hold that enforcement of [such a] waiver does not result in a miscarriage of justice unless enforcement would result in one of … four situations…." *Hahn*, 359 F.3d at 1327.  Those situations are: "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." *Id*. (quoting *United States v. Elliott*, 264 F.3d 1171, 1173 (10th Cir. 2001)).  Moreover, "to satisfy the fourth *Elliott* factor—where the waiver is otherwise unlawful—'the error [must] seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings[,]' as that test was employed in *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770, 123 L.Ed.2d 508 (1993)." *Id*.  Petitioner does not argue that any of the first three situations apply to his case.  *See generally docs. 5, 9*.[3]  Therefore, he must establish that his waiver was "otherwise unlawful" in that the alleged error seriously affects the fairness, integrity or public reputation of judicial proceedings.  He fails to do so.

Petitioner's argument on this point is brief: "Enforcing the waiver in the plea agreement that was entered into prior to this unanticipated sea change in the sentencing

---

[3] Petitioner cites to the third situation mentioned in *Hahn*—"where the sentence exceeds the statutory maximum"—and asserts immediately thereafter that "Without the application of USSG 2K2.1(a)(2), Mr. Valdez would have been facing a guideline sentencing range of 51-63 months.  Therefore, should he prevail, Mr. Valdez's sentence clearly exceeds the advisory guideline sentencing range relied upon by the court at the time of his sentencing." *Doc. 5* at 3-4.  Because an advisory guideline sentencing range does not equate to a statutory maximum, *see United States v. Porter*, 405 F.3d 1136, 1144 (10th Cir. 2005), and Petitioner does not argue otherwise, this glancing gesture at an argument that the third *Elliott* factor is relevant to his waiver does not warrant further analysis.

law which would keep in place a prison sentence above the current advisory guidelines

sentencing range for his crime, meets the test of a miscarriage of justice." *Doc. 9* at 2; *see*

*also doc. 7* at 4.  He also highlights that his claim is founded upon a constitutionally-

based decision by the Supreme Court.[4]  *See id*.  Petitioner's argument must be rejected in

the face of *United States v. Porter*, 405 F.3d 1136 (10th Cir. 2005).

In *Porter*, the defendant was sentenced just prior to the Supreme Court's decision

in *United States v. Booker*, 543 U.S. 220 (2005).  *Id*. at 1140.  On appeal, he argued that he

was entitled to a resentencing under the advisory sentencing guidelines mandated by

the *Booker* decision.  *Id*. at 1144.  However, the defendant had waived his right to appeal,

and the government sought to enforce that waiver.  In enforcing the waiver, the court

explained:

> [W]e find the change *Booker* rendered in the sentencing landscape does not
> compel us to hold Porter's plea agreement unlawful.  This outcome is
> obvious.  To hold otherwise would suggest that most appeal waivers in
> cases pending on direct appeal at the time the Supreme Court decided
> *Booker* are unlawful.  The essence of plea agreements, however, is that they
> represent a bargained-for understanding between the government and
> criminal defendants in which each side foregoes certain rights and
> assumes certain risks in exchange for a degree of certainty as to the
> outcome of criminal matters.  One such risk is a favorable change in the
> law.  To allow defendants or the government to routinely invalidate plea
> agreements based on subsequent changes in the law would decrease the
> prospects of reaching an agreement in the first place, an undesirable
> outcome given the importance of plea bargaining to the criminal justice

---

[4] Petitioner cites to a case from the Ninth Circuit Court of Appeals.  *See doc. 7* at 4; *see doc. 9* at 2.  As the undersigned could not locate the case as cited in either filing, the undersigned assumes that Petitioner intended to cite to *United States v. Bibler*, 495 F.3d 621 (9th Cir. 2007).  In *Bibler*, without further analysis, the court stated that a sentence "is illegal if it exceeds the permissible statutory penalty for the crime *or* violates the Constitution."  495 F.3d at 624 (emphasis added).

system.

*Id.* at 1145.  First, if the sea change heralded by *Booker* is insufficient to render a waiver

*ipso facto* unenforceable, then the impact of *Johnson* is similarly insufficient.  Second,

*Booker*, as *Johnson*, was a constitutionally-based opinion.  *See Booker*, 543 U.S. at 244

(holding that mandatory sentencing guidelines violate the Sixth Amendment right to a

jury trial).  *Porter's* enforcement of the defendant's waiver makes clear that, just because

a change in the law is constitutionally-based, waivers that foreclose arguments on the

basis of that change remain enforceable.

More broadly, enforcing Petitioner's waiver will not result in a miscarriage of

justice.  His sentence is well below the statutory maximum of ten years.  18 U.S.C. §

924(a)(2).  In fact, even accepting the merits of his argument, his sentence is only nine

months outside of the guideline range for which he now argues.  Finally, his sentence

was based upon a Rule 11(c)(1)(C) agreement and not on the guideline sentencing

range.  *See United States v. Jones*, 634 F. App'x 649, 650-52 (10th Cir. 2015) (noting that

while 18 U.S.C. § 3582(c)(2) authorizes federal courts to reduce a term of imprisonment

"based on a sentencing range that has subsequently been lowered by the Sentencing

Commission," no jurisdiction exists under that statute to modify a term of

imprisonment set forth in a plea agreement unless the agreement makes clear that the

sentence is based on a guideline sentencing range); *see also United States v. Ingram*, 908 F.

Supp. 2d 1, 6-7 (D.D.C. 2012) (construing a § 2255 motion similar to Petitioner's as being

made pursuant to 18 U.S.C. § 3582(c)(2) and denying it on the basis that the defendant's plea agreement precluded relief). He received the sentence to which he expressly agreed, and which was not tied to any particular guideline range. Consequently, a subsequent change in how his guideline range may have been calculated cannot be said to result in a miscarriage of justice.

Petitioner waived his right to collaterally attack his conviction and sentence. His Motion falls within the scope of that waiver. Enforcing that waiver in this case does not result in a miscarriage of justice. Therefore, I recommend enforcing the waiver and dismissing Petitioner's Motion on that basis.

## III.   Retroactivity

Should the Court disagree with the recommendation regarding waiver, the undersigned will also address the merits of Petitioner's claim. Petitioner's Motion argues that his conviction for burglary of a dwelling is no longer a crime of violence in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015). In *Johnson*, the Supreme Court held that the residual clause of the definition of "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B) – "or otherwise involves conduct that presents a serious potential risk of physical injury to another" -- is unconstitutionally vague. 135 S. Ct. at 2563. Therefore, individuals could not be subject to the ACCA if their underlying prior convictions qualified as "violent felonies" only under the vague residual clause. *Id*. The Supreme Court announced that *Johnson* would

apply retroactively on collateral review in *Welch v. United States*, reasoning that Johnson announced a substantive new rule.  136 S. Ct. 1257, 1264-65 (2016).

However, Petitioner was not sentenced pursuant to the ACCA. Instead, he received an enhancement to his sentencing guideline range pursuant to the definition of "crime of violence" in U.S.S.G. § 4B1.2.  That guideline provision, which resulted in a seven-level increase to the base offense level pursuant to U.S.S.G. § 2K2.1(a)(2), contained a residual clause virtually identical to the residual clause in the ACCA.  *See* U.S.S.G. § 4B1.2(a)(2).  In order to be entitled to resentencing on the basis that his conviction for burglary of a dwelling is not a "crime of violence," Petitioner must first establish that the residual clause of the guideline provision is also unconstitutional for vagueness, and that his sentence was enhanced pursuant to that clause.  In *United States v. Madrid*, 805 F.3d 1204, 1210-11 (10th Cir. 2015), on direct appeal, the Tenth Circuit indeed held that use of the residual clause in U.S.S.G. § 4B1.2 to calculate and enhance sentencing guideline ranges is unconstitutional because the clause is void for vagueness.  Consequently, the United States has conceded this point.[5]  Nonetheless, because Petitioner's motion is a collateral attack on his sentence, he would not be

---

[5] Though this issue is resolved for the time being in this Circuit, other courts have concluded otherwise. *See e.g.*, *United States v. Matchett*, 802 F.3d 1185, 1193-96 (11th Cir. 2015).  This issue is before the Supreme Court in *Beckles v. United States* (S. Ct. No. 15-8544).  Indeed, at oral argument, several Justices appeared to express skepticism about holding the guideline provision unconstitutional on vagueness grounds.  *See* Transcript of Oral Argument at 9-15, *Beckles v. United States* (S. Ct. No. 15-8544) (2016).  Obviously, if in *Beckles*, the Supreme Court determines that the guideline provision is not void for vagueness, Petitioner's claim fails.

entitled to relief unless such a decision applies retroactively.[6]

Because extending *Johnson* to the sentencing guidelines establishes a new rule, the question of retroactivity is governed by the framework set out in *Teague v. Lane*, 489 U.S. 288, 309-13 (1989) (plurality).  "[A]s a general matter, 'new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced.'"  *Welch*, 136 S. Ct. at 1264 (quoting *Teague*, 489 U.S. at 310).  There are two exceptions to this general rule: first, "new substantive rules generally apply retroactively," *id*. (quoting *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004)) (alteration omitted) (emphasis deleted); and second, "new 'watershed rules of criminal procedure,' which are procedural rules 'implicating the fundamental fairness and accuracy of the criminal proceeding,' will also have retroactive effect." *Id*. (quoting *Saffle v. Parks*, 494 U.S. 484, 495 (1990)).

First, the Court must decide whether the application of *Johnson* to the guidelines constitutes a new substantive rule or a new procedural rule.  "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." *Schriro*, 542 U.S. at 353.  "This includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Id*. at 351-52 (citations omitted).  By contrast, procedural rules

---

[6] Notwithstanding the importance of this matter on Petitioner's right to relief, he presents no argument or analysis on the retroactivity issue in either his Motion or Reply.  *See generally docs. 5, 9*.

"regulate only the manner of determining the defendant's culpability[.]"  *Id*. at 353
(emphasis deleted).  Thus, rules that alter "the range of permissible methods for
determining whether a defendant's conduct is punishable" by "allocating
decisionmaking authority" are procedural.  *Id*.  Procedural rules also do not create a
class of persons convicted of conduct that is not lawfully criminalized, "but merely raise
the possibility that someone convicted with use of the invalidated procedure might
have been acquitted otherwise."  *Id*. at 352.

Under this framework, it is unsurprising that the Supreme Court concluded that
*Johnson*'s invalidation of the ACCA's residual clause was a new substantive rule
because it "changed the substantive reach of the Armed Career Criminal Act …."  *See*
*Welch*, 136 S. Ct. at 1265.  As the Court explained,

> Before *Johnson*, the Act applied to any person who possessed a firearm
> after three violent felony convictions, even if one or more of those
> convictions fell under only the residual clause.  An offender in that
> situation faced 15 years to life in prison.  After *Johnson*, the same person
> engaging in the same conduct is no longer subject to the Act and faces at
> most 10 years in prison.  The residual clause is invalid under *Johnson*, so it
> can no longer mandate or authorize any sentence.  *Johnson* establishes, in
> other words, that even the use of impeccable factfinding procedures could
> not legitimate a sentence based on that clause.

*Id*. (quotation and citations omitted).

In contrast, the invalidity of a given sentencing guideline provision is not nearly
so impactful.  While it may change a defendant's sentencing guideline range, it will not
change the maximum or minimum sentence to which he is subject.  Consequently, a

sentence imposed, even after considering a guideline provision later determined to be

invalid, will never exceed the statutorily authorized sentence for the crime for which the

defendant was convicted.  Thus, such a sentence is not illegal or unlawful.  *See Sun Bear*

*v. United States*, 644 F.3d 700, 705 (8th Cir. 2011) (en banc) (360-month sentence imposed

following an erroneous determination that defendant was a career offender pursuant to

the sentencing guidelines was "not unlawful" because "[a]n unlawful or illegal sentence

is one imposed without, or in excess of, statutory authority.").  In other words, unlike in

*Johnson*, where the ACCA increased the statutory maximum sentence, the sentence

imposed using the problematic guideline provision can indeed be "legitimate[d]"

merely by a judge's determination that the sentence was still appropriate.  *Welch*, 136 S.

Ct. at 1265; *see United States v. Booker*, 543 U.S. 220, 246 (2005) (sentencing guidelines are

advisory).  Therefore, the application of *Johnson* to invalidate the U.S.S.G. § 4B1.2(a)(2)

guideline provision has none of the earmarks of a "substantive" rule change under

*Teague*.

Indeed, the Supreme Court has characterized errors in calculating the advisory

guidelines range as "procedural."  *See, e.g.*, *Peugh v. United States*, 133 S. Ct. 2072, 2083

(2013) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).  This characterization is

accurate because the calculation of a defendant's offense level is but one step in a multi-

step sentencing procedure.  Importantly, while "'a sentence within the applicable

Guidelines range is presumptively reasonable[,]' *United States v. Terrell*, 445 F.3d 1261,

1264 (10th Cir.2006), '[t]his presumption, however, is an appellate presumption, not one that the trial court can or should apply.'" *United States v. Nolf*, 30 F. Supp. 3d 1200, 1212 (D.N.M. June 20, 2014) (Browning, J.); *see also Rita v. United States*, 551 U.S. 338, 347–48 (2007); *Gall*, 552 U.S. at 40-41; *Kimbrough v. United States*, 552 U.S. 85, 90–91 (2007). "Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory Guideline sentence." *Nolf*, 30 F. Supp. 3d at 1212 (citing *Rita*, 551 U.S. at 347–48; *Gall*, 552 U.S. at 40; *Kimbrough*, 552 U.S. at 90–91). Consequently, if *Johnson* applies to invalidate all enhancements which stem from the §4B1.2(a)(2) residual clause, that new rule merely alters one non-determinative step in the sentencing process. As such, the new rule would be procedural. *See Hawkins II v. United States*, 724 F.3d 915, 917-18 (7th Cir. 2013) (holding that "errors in applying advisory guidelines are procedural," and opining that a new rule that erroneously sentencing a defendant under current Guidelines rather than less punitive Guidelines in effect at the time of offense is a violation of the Ex Post Facto Clause would therefore not be applied retroactively under *Teague*).

Having concluded that the application of *Johnson* to the guidelines is a procedural rule, it can only be applied retroactively if it constitutes a "watershed" rule of criminal procedure. *Saffle*, 494 U.S. at 495. To do so, "the rule must not only improve the accuracy with which defendants are convicted or acquitted, but also alter our understanding of the bedrock procedural elements essential to the fairness of a

13

proceeding." *United States v. Mora*, 293 F.3d 1213, 1218-19 (10th Cir. 2002) (citation, quotation, and emphasis omitted).  This exception is a narrow one.  *Johnson v. McKune*, 288 F.3d 1187, 1197–98 (10th Cir. 2002). Watershed rules are on the magnitude of the rule announced in *Gideon v. Wainwright*, 372 U.S. 335 (1963).  *Mora*, 293 F.3d at 1219 (citing *Saffle v. Parks*, 494 U.S. 484, 495 (1990)).  For example, the Tenth Circuit has held that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt, did not qualify as a watershed decision. *Id.*; *see also United States v. Bellamy*, 411 F.3d 1182, 1186-88 (10th Cir. 2005) (*Booker* constituted a non-watershed procedural rule under *Teague* analysis).  Given the high bar, it is easy to conclude that application of *Johnson* to the guidelines is not a watershed decision.

Because the application of *Johnson* to the guidelines would be a non-watershed procedural rule, it would not have retroactive effect to Petitioner's sentence.  Therefore, I recommend denying Petitioner's motion on that ground.

## IV.   DOES BURGLARY OF A DWELLING REMAIN A CRIME OF VIOLENCE?

Should the Court disagree with the recommendation regarding waiver and non-retroactivity, the undersigned will also address whether Petitioner's conviction for burglary of a dwelling remains a crime of violence under U.S.S.G. § 4B1.2 even after redacting its residual clause.

The first issue which must be addressed pertains to the divisibility of the statute under which Petitioner was convicted.  His conviction is based upon a violation of New Mexico's Burglary statute, which provides as follows:

> Burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein.
>
> A. Any person who, without authorization, enters a dwelling house with intent to commit any felony or theft therein is guilty of a third degree felony.
>
> B. Any person who, without authorization, enters any vehicle, watercraft, aircraft or other structure, movable or immovable, with intent to commit any felony or theft therein is guilty of a fourth degree felony.

N.M.S.A. § 30-16-3.  The two discrete subsections establish burglary of a dwelling as a third degree felony and other types of burglary as fourth degree felonies.  As such, a conviction under subsection (A) carries a different and greater statutory penalty than a conviction under subsection (B).  *See* N.M.S.A. § 31-18-15(A).  Thus, the statute is divisible and the Court may apply the modified categorical approach to determine under which subsection Petitioner was convicted.  *See Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016).  Petitioner does not dispute the statute's divisibility or that he was convicted under N.M.S.A. § 30-16-3(A).  *See generally docs. 5, 9; see also doc. 8*, Ex. B.

The Court must then turn to the question of whether Petitioner's conviction for burglary of a dwelling qualifies as a "crime of violence" under U.S.S.G. § 4B1.2 without its residual clause.  *See Mathis*, 136 S. Ct. at 2249.  At the time of Defendant's sentencing,

the definition of "crime of violence" under that guideline provision included "burglary of a dwelling." U.S.S.G. § 4B1.2(a)(2). The mandated categorical approach requires the Court to decide whether New Mexico's offense of burglary of a dwelling categorically falls within the generic definition of "burglary of a dwelling" enumerated in the guideline provision. *See Taylor v. United States*, 495 U.S. 575, 598 (1990).

Petitioner argues that it does not for two reasons. One of his arguments is found only in his Reply, but it will be addressed first. Petitioner's reply argument can be summarized as follows. *See doc. 9* at 3-5. First, a "burglary of a dwelling" under the Guidelines must be defined the same way, or be a subset of, "burglary" as defined in *Taylor*. Second, in *Taylor*, the Supreme Court made clear that burglary statutes which "includ[e] places, such as automobiles and vending machines, other than buildings" were broader than the generic definition of burglary, which is limited to buildings. 495 U.S. at 599 (citing, as an example, a Missouri statute that "included breaking and entering 'any booth or tent, or any boat or vessel, or railroad car.'"). Third, one can be convicted under N.M.S.A. § 30-16-3(A) for a "burglary of a vehicle if that vehicle were being used as a residence." *Doc. 9* at 3. Therefore, Petitioner argues, New Mexico's residential burglary statute is broader than the "burglary of a dwelling" crime included in section 4B1.2(a)(2), because it criminalizes conduct that does not qualify as a "burglary" under *Taylor*, and therefore does not qualify as a burglary of a dwelling under the Guidelines.

Petitioner's argument must be rejected because its foundational premise has been explicitly rejected by the Tenth Circuit. In *United States v. Rivera-Oros*, 590 F.3d 1123, 1128-32 (10th Cir. 2009), the court held that *Taylor*'s definition of generic burglary in the context of the ACCA does not govern when interpreting the meaning of a guideline provision using the phrase "burglary of a dwelling." After much analysis, the *Rivera-Oros* court gives us the generic definition of "burglary of a dwelling" as used in the Guidelines, which must be compared to Petitioner's New Mexico conviction – an unlawful entry into, or remaining in, any enclosed space that is used or intended for use as a human habitation with the intent to commit a crime. *Id*. This definition, unlike *Taylor*'s, is "not limited to permanent and immovable structures or buildings," but may include a vehicle if used as a residence. *Id*. at 1132. Consequently, Petitioner's reply argument is without merit.

Armed with the appropriate generic definition of the Guideline provision "burglary of a dwelling," I will turn to Petitioner's remaining argument. He contends that "the generic offense discussed in *Rivera-Oros* with the New Mexico crime of residential burglary reveals a mismatch because New Mexico residential burglary encompasses burglaries of uninhabited and unconnected buildings." *Doc. 5* at 6. Indeed, it is an open issue whether a violation of a state burglary statute qualifies as a categorical "burglary of a dwelling" under the Guidelines where the statute permits conviction upon entry to a "structure appurtenant to a dwelling which could include …

a tool shed at a considerable distance from the residence." *United States v. Ventura-Perez*, 666 F.3d 670, 674-676 (10th Cir. 2012) (assuming an error and resolving on other grounds); *see also United States v. Armendariz-Perez*, 543 F. App'x 876, 881-82 n.8 (10th Cir. 2013) (unpublished).  However, Petitioner presents no authority on which to conclude that the New Mexico statute would permit such a conviction.

N.M.S.A. § 30-16-3(A) requires entry into "a dwelling house."  The common meaning of that phrase would clearly fall within *Rivera-Oros*'s concept of "any enclosed space that is used or intended for use as a human habitation."  590 F.3d at 1132. Turning to the definition of "dwelling house" in New Mexico's Uniform Jury Instructions does Petitioner no favors.  It defines the term as "any structure, any part of which is customarily used as living quarters."  NM R CR UJI 14-1631.  *See also Dwelling-house*, BLACK'S LAW DICTIONARY (9th ed. 2009) (providing as the generic definition "The house or other structure in which a person lives; a residence or abode.").  Again, this definition clearly falls within *Rivera-Oros*'s concept of "any enclosed space that is used or intended for use as a human habitation."  590 F.3d at 1132.

Petitioner argues that the New Mexico definition of burglary "has been held to encompass a burglary of any part of a dwelling, even if the locus of the burglary had 'no opening to' the occupied structure."  *Doc. 5* at 6 (citing and quoting *State v. Lara*, 587 P.2d 52, 53 (N.M. Ct. App. 1978)).  However, in affirming the burglary conviction, the *Lara* court relied heavily on the fact that the "garage was a part of the habitation; it was

'directly contiguous to and a functioning part' of the residence." *Id*. (citations omitted).
As another judge in this District has pointed out, "The garage in *Lara* was literally under
the same roof as the rest of the dwelling house." *United States v. Perez*, No. CV 16-545
RB/SMV, Magistrate Judge's Proposed Findings and Recommended Disposition at 19
(D.N.M. Oct. 12, 2016) (Vidmar, J.) (unpublished) (recommending finding New Mexico
residential burglary qualifies as "crime of violence" under U.S.S.G. § 4B1.2)).[7]  Once
more, the facts underlying the conviction in Lara clearly fall within *Rivera-Oros*'s
concept of "any enclosed space that is used or intended for use as a human habitation."
590 F.3d at 1132.

In conclusion, Petitioner's conviction under N.M.S.A. § 30-16-3(A) is
categorically a "crime of violence" under U.S.S.G. § 4B1.2 even without its residual
clause.  *See also United States v. Thyberg*, No. CV 16-514 JAP/CG, Proposed Findings and
Recommended Disposition at 8, 10 (D.N.M. Oct. 6, 2016) (Garza, J.) (unpublished).  As
such, even after *Johnson*, Petitioner's burglary conviction was properly used to enhance
his sentencing guidelines pursuant to that provision.  Therefore, I recommend denying
Petitioner's motion on that ground.

## V.   CONCLUSION

Petitioner waived his right to collaterally attack his conviction and sentence.  His

---

[7] District Judge Robert Brack has since adopted Judge Vidmar's PFRD in full, holding on *de novo* review
that "New Mexico's residential burglary statute, NMSA 1978, § 30-16-3(A), qualifies as an enumerated
'crime of violence' at § 4B1.2(a).  *United States v. Perez*, No. CR 04-1308 RB, No. CV 16-545 RB/SMV, Order
Adopting Proposed Findings and Recommended Disposition at 19 (D.N.M. Dec. 2, 2016).

Motion falls within the scope of that waiver.  Enforcing that waiver in this case does not result in a miscarriage of justice.  Therefore, I recommend enforcing the waiver and dismissing Petitioner's Motion on that basis.

Should the Motion not be denied on waiver, the Court should consider whether the application of *Johnson* to the guidelines would have retroactive effect under the *Teague* analysis.  I recommend finding that it would be a non-watershed procedural rule, and thus would not have retroactive effect to Petitioner's sentence.  Therefore, I recommend denying Petitioner's motion on that ground.

Should the Motion not be denied on waiver or non-retroactivity, the Court should consider whether Petitioner's conviction for burglary of a dwelling remains a "crime of violence" under U.S.S.G. § 2K2.1(a)(2), as defined in § 4B1.2 (2009) even after redacting its residual clause.  I recommend finding that it does.  Therefore, I recommend denying Petitioner's motion on that ground.

GREGORY B. WORMUTH
United States Magistrate Judge

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**